UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　　vs.<br><br>GLADYS VASQUEZ VALENZUELA et al.,<br><br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. CR 07-00011(B)- MMM<br><br>ORDER DENYING DEFENDANT'<br>MARIA DE LOS ANGELES VICENTE'S<br>MOTION FOR JUDGMENT OF<br>ACQUITTAL UNDER RULE 29 AND<br>HER MOTION FOR NEW TRIAL UNDER<br>RULE 33 |

## I.  FACTUAL BACKGROUND

In this multi-defendant prosecution, defendants were charged collectively with conspiracy to (a) import aliens for immoral purposes (i.e., prostitution) and (b) commit sex trafficking offenses in violation of 18 U.S.C. § 371.  They were also charged individually with substantive counts of (1) sex trafficking of children or by force, fraud, or coercion in violation of 18 U.S.C. § 1591(a)(1); (2) transportation of minors with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a); (3) importation of aliens for immoral purposes in violation of 8 U.S.C. § 1328; (4) harboring certain aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and (a)(1)(B)(i); and (5) transporting certain aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and

1   (a)(1)(B)(i).[1]

2       A jury trial commenced on January 6, 2009 and concluded on February 3, 2009.  On

3   February 11, 2009, the jury returned guilty verdicts on twenty-one of the charged counts.  The

4   jury was deadlocked as to the remaining nineteen counts.

5       Pursuant to a joint stipulation,[2] defendant Maria de los Angeles Vicente filed a written brief

6   on her pre-verdict Rule 29 motion; she also filed a new post-verdict motion for a new trial.[3]  She

7   seeks judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure or, in the

8   alternative, a new trial under Rule 33.  The government opposed Vicente's motion on March 11,

9   2009.[4]

10

11                          **II.  DISCUSSION**

12  **A.       Legal Standard for Judgment of Acquittal Pursuant to Rule 29**

13      Under Rule 29 of the Federal Rules of Criminal Procedure, the court must order the entry

14  of a judgment of acquittal "if the evidence is insufficient to sustain a conviction."

15  FED.R.CRIM.PROC. 29(a); *United States v. Tisor*, 96 F.3d 370, 379, n. 6 (9th Cir. 1996); *United*

16  *States v. Affinito*, 873 F.2d 1261, 1264 (9th Cir. 1989).  Motions for judgment of acquittal made

17  after the return of a guilty verdict must be made within seven days or "within any other time the

18  court sets during the 7-day period." FED.R.CRIM.PROC. 29(a); *United States v. Navarro Viayra*,

19  365 F.3d 790, 792 (9th Cir. 2004).  Here, the court extended the seven day period immediately

20  following the jury's return of a verdict, and defendant filed within the extended time set by the

21  _____

22      [1]Not all defendants were charged in all counts.

23      [2]Order re: Post-Trial Motions Briefing Schedule; Granting Ex Parte for Defendant Maria
    de los Angeles Vicente, Docket No. 722 (Feb. 23, 2009).

24

25      [3]See Notice of Motion and Motion for Judgment of Acquittal Under Fed. R. Crim. P. 29
    Or, in the Alternative, for a New Trial Under Fed. R. Crim. P. 33 ("Defendant's Motion"),

26  Docket No. 729 (Feb. 25, 2009).

27      [4]See Government's Opposition to Defendant Maria de los Angeles's Motion for Judgment
    of Acquittal or for a New Trial ("Government Opposition"), Docket No. 733 (Mar. 11, 2009).

28  Defendant did not file a reply to the government's opposition.

1  court.[5]

2      Entry of a judgment of acquittal is proper only if the court concludes, after viewing the

3  evidence in the light most favorable to the government, and drawing all reasonable inferences in

4  the government's favor, that no reasonable juror could find the defendant guilty of the crime

5  charged beyond a reasonable doubt. *United States v. Leos-Maldonado*, 302 F.3d 1061 (9th Cir.

6  2002) ("'. . . this court must review the evidence presented against the defendant in the light most

7  favorable to the government to determine whether any rational trier of fact could have found the

8  essential elements of the crime beyond a reasonable doubt,'" quoting *United States v.*

9  *Pacheco-Medina*, 212 F.3d 1162, 1163 (9th Cir. 2000)); *United States v. Reyes*, 302 F.3d 48, 52

10 (2d Cir. 2002) ("[A] district court can enter a judgment of acquittal on the grounds of insufficient

11 evidence only if, after viewing the evidence in the light most favorable to the prosecution and

12 drawing all reasonable inferences in the government's favor, it concludes no rational trier of fact

13 could have found the defendant guilty beyond a reasonable doubt"); *United States v. Medina*, 161

14 F.3d 867, 872 (5th Cir. 1998) ("A motion for a judgment of acquittal challenges the sufficiency

15 of the evidence to convict. . . .   We review the denial of this motion *de novo*.  In doing so, we

16 consider the evidence, all reasonable inferences drawn from it and all credibility determinations

17 in the light most favorable to the Government, and affirm if a reasonable jury could find the

18 offense's essential elements beyond a reasonable doubt"); *United States v. Cunningham*, 108 F.3d

19 120, 123 (7th Cir. 1997) ("'We review the evidence and all reasonable inferences in the light most

20 favorable to the government, and will reverse a conviction only if no rational trier of fact could

21 have found the essential elements of the offense charged beyond a reasonable doubt,'" quoting

22 *United States v. Sax*, 39 F.3d 1380, 1385 (7th Cir. 1994)).

23 ─────────────

24      [5]At the close of the government's case-in-chief, defendant moved for a judgment of
   acquittal on all charges against her, "especially" Count 27. (RT (Jan. 30, 2009) at 2726:25 to
25 2727:1-10.)  She renewed this motion at the close of the defense case. (*Id*. at 2896:24-25 to
   2897:1-11.)  The court has issued a separate order regarding defendant's pre-verdict motion.
26 Defendant's present motion focuses on Count 17 and 27 only.  Rule 29, as amended in 1966,
   permits a motion for acquittal to be made "after the discharge of the jury even though no similar
27 motion has been made prior to the submission of the case to the jury." 2A Wright, King, Klein,
   & Leipold, FEDERAL PRACTICE & PROCEDURE CRIMINAL 3d § 465.
28

1    **B.    Whether Defendant's Motion for Acquittal Must Be Granted**

2    Defendant argues that the evidence presented at trial was insufficient to prove beyond a

3    reasonable doubt that she was guilty of importation and harboring of aliens for purposes of

4    prostitution, as charged in Count 27 of the second superseding indictment.[6]

5    Count 27 charged defendant with violating 8 U.S.C. § 1328 by importing alien victim

6    Kathy into the United States for purposes of prostitution.  Section 1328 provides in pertinent part:

7    "The importation into the United States of any alien for the purpose of prostitution,

8    or for any other immoral purpose, is forbidden. Whoever shall, directly or

9    indirectly, import, or attempt to import into the United States any alien for the

10    purpose of prostitution or for any other immoral purpose, or shall hold or attempt

11    to hold any alien for any such purpose in pursuance of such illegal importation, or

12    shall keep, maintain, control, support, employ, or harbor in any house or other

13    place, for the purpose of prostitution or for any other immoral purpose, any alien,

14    in pursuance of such illegal importation, shall be fined under Title 18, or

15    imprisoned not more than 10 years, or both."  8 U.S.C. § 1328.

16    At trial, the jury was instructed that, before a defendant could be found guilty of violating § 1328,

17    the government had to prove each of the following elements beyond a reasonable doubt: (1) a

18    person who was an alien was imported into the United States for purposes of prostitution; (2) the

19    defendant knew that the person was an alien; and (3) the defendant either (a) knowingly imported

20    (directly or indirectly) the alien into the United States for the purpose of prostitution, or

21    (b) knowingly kept, maintained, controlled, supported, employed, or harbored the alien in

22    furtherance of the alien's importation into the United States for the purpose of prostitution.[7]

23    Defendant challenges the sufficiency of the evidence to satisfy the third prong of this

24

25    _____

26    [6]Defendant's Motion at 6.  She does not move for acquittal on the basis of insufficient
     evidence on Count 17.

27

28    [7]The jury was further required to unanimously agree as to whether (a) or (b) or both had
     been proven beyond a reasonable doubt.

1  standard.[8]  She argues that the testimony provided at trial regarding Kathy indicates that co-

2  defendant Gladys Vasquez Valenzuela ("Valenzuela") recruited Kathy to come to the United

3  States, funded Kathy's trip from Guatemala by paying her smuggling fee, and picked Kathy up

4  upon her arrival in Los Angeles.[9]  Vicente also argues that victim-witness Rosaura testified that

5  she overheard a conversation between Vicente and Valenzuela in which Vicente stated she did not

6  want the new woman (Kathy) because she was older than expected.[10]  Likewise, Vicente

7  references the testimony of victim-witness Tania, who stated that Valenzuela said Vicente had

8  refused to "take" Kathy because she was too old.[11]  Defendant argues that taxi driver witness

9  Joaquin Huerta testified that, after Kathy and Rosaura escaped, he overheard former co-defendant

10  Albertina Vasquez Valenzuela, aka Christina, state that Kathy was a "joke" Vicente had played

11  on Valenzuela.[12]  Vicente also references the testimony of co-defendant Flor Morales Sanchez,

12  who denied being involved in Kathy's recruitment.[13]  Citing this testimony, defendant contends

13  that no rational trier of fact could have found beyond a reasonable doubt that she imported and/or

14  harbored Kathy in violation of § 1328.

15     The government counters that Kathy's testimony established that Vicente's sister-in-law

16

17

_____

18     [8]As the government notes, defendant does not dispute its proof of Kathy's alienage or her
knowledge thereof. (Government Opposition at 17 n.4.)  Having reviewed the record, the court
19  finds that there was more than sufficient evidence to permit the jury to conclude that both of these
20  elements had been proved beyond a reasonable doubt.  Accordingly, it agrees that the evidence
was sufficient to prove the first and second elements required to convict defendant of Kathy's
21  importation and/or harboring under § 1328.

22     [9]Defendant's Motion at 6-7.

23     [10]*Id.*

24
    [11]*Id.* at 7.
25
    [12]*Id.*
26

27     [13]*Id.*   The import of this argument is unclear, since Morales-Sanchez's denial of
involvement neither supports nor undermines the government's assertion that Vicente imported
28  and/or harbored Kathy.

1    recruited her to leave Guatemala and travel to the United States to work for Vicente.[14]   Kathy

2    testified that she understood that she would be working for Vicente, and that Vicente would pay

3    her smuggling fee.[15]   The government asserts that other witnesses offered corroborating testimony

4    that similarly supports the jury's verdict.   First, Rosaura testified that Vicente had expected a 15-

5    year-old girl to come work for her as a prostitute, and that, when "older" Kathy arrived instead,

6    Vicente gave her to Valenzuela.[16]   Similarly, Tania testified that Vicente gave Kathy to Valenzuela

7    because she "looked so old."[17]   The government argues that these victim-witnesses' testimony is

8    "entirely consistent" with the testimony of taxi driver witness Juan Montez Velazco, who testified

9    that the co-defendants would regularly trade the victim prostitutes.[18]

10   _____

11         [14]Government Opposition at 17 (citing RT (Jan. 22, 2009) at 1912-23).

12         [15]*Id.*   See also RT (Jan. 22, 2009) at 1915:11-13 ([Q:] "And who did you think you would
13   come and work for when you got to the United States? [A:] For Angela"); *id.* at 1917:22-25 to
     1918:1 ([Q:] "Did you think Angela was supposed to pay the smugglers? [Mr. Price:] Objection.
14   Leading. [The Court:] Overruled. [The witness:] Yes").

15         [16]Government Opposition at 17-18.   See also RT (Jan. 27, 2009) at 2170:24-25 ([Q:] "So
16   did you overhear the conversation on the speaker phone between Gladys and Angela?"); *id.* at
     2171:1-19 ([A:] "No. The thing is since the volume on the telephone is so high, you could hear
17   the things that Gladys was saying and the things that Angela was saying. [Q:] What did you hear
     Gladys and Angela say about the 15-year-old girl that was supposed to come? [A:] Well, all I
18   heard was that a girl was coming and that it was not a 15-year-old girl, that it was an older girl.
19   [Q:] And did an older girl eventually come to work for Gladys? [A:] Yes. [Q:] Who was the older
     girl that came? [A:] That was Kathy. [Q:] Do you recall anything else that Angela said about the
20   15 year old that was supposed to come? [Mr. Price:] Objection. It misstates the testimony. [The
     Court:] Overruled. [Mr. Price:] Objection. Leading. [The Court:] Overruled. [The witness:] Yes.
21   She said she didn't want her because she was already older").

22
           [17]Government Opposition at 18.   See also RT (Jan. 22, 2009) at 1789:19-22 ([Q:] "And
23   how did Gladys humiliate [Kathy]? [A:] She said that she was old, that Angela had brought her
     – had brought her over, but since she looked so old, she had given her over to her").
24

25         [18]Government Opposition at 18.   See also RT (Jan. 23, 2009) at 2094:15-21 ([Q:] "And
     who is 'them' that would negotiate the girls? [A:] Between Mirna and Gladys and Angela, her
26   niece. [Q:] And the same conversations that Gladys had with Mirna about trading, would you hear
     those same types of conversations between Gladys and Angela? [A:] They would like – there
27   would be some girls with others and, you know, they would like pass them around between
28   them").

1    Finally, the government maintains that the undercover recordings introduced into evidence

2  at trial independently establish Vicente's responsibility for unlawfully importing Kathy into the

3  United States, and corroborate the other witnesses' testimony to this effect.[19]   The recordings,

4  made immediately after Kathy and Rosaura escaped, contain Valenzuela's reaction, which includes

5  cursing Vicente for trading or giving Kathy to her.  At one point in the recording, Valenzuela

6  telephoned Vicente and spoke with her directly, blaming her for saddling Valenzuela with Kathy.[20]

7  At another point, Valenzuela spoke with Vicente's brother, Armando, and said that she made a

8  mistake taking Kathy when Kathy had been intended for Vicente all along.[21]

9    Having reviewed this and other trial evidence, the court concludes that there was sufficient

10  evidence at trial for the jury to find beyond a reasonable doubt that Vicente was guilty of

11  importing victim Kathy in violation of 8 U.S.C. § 1328, as charged in Count 27.  Accordingly,

12  defendant's motion for acquittal is denied.

13    **C.    Legal Standard for Motions for New Trial Under Rule 33**

14    Rule 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment

15  and grant a new trial if the interest of justice so requires."  FED.R.CRIM.PROC. 33(a).  "Any error

16  of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new

17  trial."  3 Wright, King, Klein, & Leipold, FEDERAL PRACTICE & PROCEDURE CRIMINAL 3d

18  § 556; see also, e.g., *United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004) (citing Wright);

19  *United States v. McDarrah*, No. 05 Cr. 1182(PAC), 2007 WL 273799, *8 (S.D.N.Y. Jan. 31,

20  2007) ("The standard for reviewing Rule 33 motions based on asserted errors of law has not been

21  specifically stated in the Second Circuit.  Courts in other circuits, however, have adopted some

22  version of the standard that 'any error of sufficient magnitude to require reversal on appeal is an

23  adequate ground for granting a new trial.' . . .  The ultimate test on a Rule 33 motion remains

24  'whether letting a guilty verdict stand would be a manifest injustice,'" quoting *United States v.*

25  _____

26    [19]Government Opposition at 18-19.

27    [20]*Id*. at 19; *id*., Exhs. A-D (relevant excerpts of transcript of undercover recording).

28    [21]*Id*.

1  *Ferguson*, 246 F.3d 127, 134 (2d Cir. 2001)).

2  Grounds for a Rule 33 motion may include erroneous jury instructions and/or a variance

3  between the indictment and the proof.   Wright, et al. FEDERAL PRACTICE & PROCEDURE

4  CRIMINAL 3d § 556.  As with Rule 33 motions premised on newly discovered evidence, "motions

5  for a new trial are not favored, and are granted only with great caution." *Wall*, 389 F.3d at 474

6  (quoting *United States v. O'Keefe*, 128 F.3d 885, 898)); see also *United States v. Barr*, No.

7  86-5249, 1988 WL 26631, *5 (9th Cir. Mar. 24, 1988) (Unpub. Disp.) ("Motions for new trials

8  are not favored by the courts and must be viewed with great caution" (citations omitted)).

9  **D.      Whether Defendant's Motion for New Trial Must Be Granted**

10  Vicente seeks a new trial on both Count 27 and Count 17.  As respects Count 27, the

11  court, having weighed the evidence, concludes that it does not preponderate heavily against the

12  jury's verdict, and that no serious miscarriage of justice occurred.  Accordingly, Vicente's motion

13  for a new trial on this count is denied.

14  Defendant's motion for a new trial on Count 17 advances two arguments: first, that the

15  jurors could have been divided as to whether the offense was committed by force or fraud or

16  coercion;[22] and second, that there is a variance between the language of the indictment, which is

17  conjunctive, and the language of the statute and/or jury instruction, which is disjunctive.[23]

18  **1.      Force, Fraud, or Coercion**

19  Defendant contends that the court erred in declining to instruct the jury that it "was

20  required to find unanimously that the offense was committed either by 'force,' 'fraud,' or

21  'coercion'" before finding defendant guilty of violating 18 U.S.C. § 1591(a).[24]  Citing *Castillo*

22

23  [22]Defendant's Motion at 5.

24  [23]*Id*.  Defendant does not elaborate upon this theory, stating only "there is a variance

25  between the language of the indictment, which alleges that Ms. Vicente knew that force, fraud *and*

26  coercion would be employed."  (*Id*.)

27  [24]*Id*.  During trial, co-defendant Mirna Jeanneth Vasquez Valenzuela made an identical

argument in support of her request for a jury instruction that required a unanimous finding

28  regarding the use of force or coercion as opposed to fraud.  (RT (Jan. 26, 2009) at 37-38.)  At

1   *v. United States*, 530 U.S. 120, 123 (2000), she argues that "[e]ach element of a crime must be

2   found by a unanimous jury to have been proven beyond a reasonable doubt" before a guilty

3   verdict is appropriate.[25]  Although she does not elaborate, the court understands her argument to

4   be that "force, fraud, or coercion" are elements of the § 1591(a) charge, rather than means by

5   which the law can be violated.

6        It is undisputed that jurors must unanimously conclude that each element of an offense has

7   been proven beyond a reasonable doubt before returning a guilty verdict.  As the Ninth Circuit

8   has explained, however, jurors need not agree on the particular means by which an offense was

9   committed.  See, e.g., *United States v. UCO Oil Co.*, 546 F.2d 833, 838 (9th Cir. 1976) ("It is

10  not a valid objection that . . . the jury, in arriving at a unanimous verdict, may not agree on the

11  particular means by which the offense was committed").

12       Vicente implies that § 1591(a) sets out multiple offenses: sex trafficking by force, sex

13  trafficking by fraud, sex trafficking by coercion, etc.  To determine whether a statute creates

14  separate offenses or instead simply describes alternative means of committing the same crime,

15  courts in this circuit employ the framework set forth in *UCO Oil*.  See, e.g., *United States v.*

16  *Arreola*, 467 F.3d 1153, 1157 (9th Cir. 2006).  This analysis examines "several relevant factors,

17  including (1) [the] language of the statute itself, (2) the legislative history and statutory context,

18  (3) the type of conduct proscribed, and (4) the appropriateness of multiple punishment for the

19  conduct charged in the indictment." *Id.* (quoting *UCO Oil*, 546 F.2d at 836-38 (quotation marks

20  omitted)).

21       As charged in Count 17,[26] section 1591(a) provides:

22       "Whoever knowingly . . . in or affecting interstate or foreign commerce, . . .

23  _____

24  that time, the court stated that it had "take[n] a rather careful look at that matter and reviewed the
    case law that both parties had submitted and disagree[d] with [defendant's] position on that
25  subject." (*Id.* at 38:18-20.)

26       [25]Defendant's Motion at 5.

27       [26]The statute was amended on December 22, 2008.  The version quoted in this order is the
28  version that was in effect at the time the second superseding indictment was filed.

1      recruits, entices, harbors, transports, provides, or obtains by any means a person

2      . . . knowing that force, fraud, or coercion described in subsection (c)(2) will be

3      used to cause the person to engage in a commercial sex act, or that the person has

4      not attained the age of 18 years and will be caused to engage in a commercial sex

5      act, shall be punished as provided in subsection (b)."  18 U.S.C. § 1591.

6   "Coercion" is defined in § 1591(c)(2).[27]  The statute does not define "force" or "fraud."

7      The government contends that the *UCO Oil* factors compel the conclusion that "force,

8   fraud, or coercion" describe alternative means of committing the same crime.  The court agrees.

9   First, the phrase "force, fraud, or coercion" is contained in a single paragraph which also includes

10  an alternative means of violating § 1591 – namely, trafficking a victim who has not attained the

11  age of 18.  Additionally, § 1591(a)(1) is directed at "a single evil," i.e., compelling a person to

12  engage in a commercial sex act.[28]  The statute criminalizes sex trafficking when committed by

13  certain means, which are described in the disjunctive and presented as alternatives in the text of

14  the statute; they are not fundamental elements of the criminal activity proscribed by the statute.

15      More broadly, § 1591 is part of a group of laws in Chapter 77 of Title 18 that address

16  different forms of criminal human trafficking and slavery.[29]  The statutory context, therefore,

17  reveals an intent to criminalize one type of act (sex trafficking), regardless of which of several

18  means are used to commit the act.[30]  There is no indication that Congress intended to punish

19

20      [27]Following the December 22, 2008 amendment, this definition is now codified at

21  § 1591(e)(2).

22      [28]Government Opposition at 11.

23      [29]*Id.*

24      [30]The December 22, 2008 amendments to § 1591(a) lend additional support to these

25  conclusions.  The provision now reads: " . . . knowing, or in reckless disregard of the fact, that

    *means* of force, threats of force, fraud, coercion described in subsection (e)(2), *or any*

26  *combination of such means* will be used to cause the person to engage in a commercial sex act,

27  or that the person has not attained the age of 18 years and will be caused to engage in a

    commercial sex act, shall be punished as follows . . . ."  18 U.S.C. § 1591(a) (emphasis added).

28  Similarly, § 1591(b)(1) as amended provides that "if the offense was effected by *means* of force,

1  defendants separately or additionally for causing sex trafficking by each of the listed methods.

2  In fact, there is no variance in the punishment for violation of § 1591(a)(1) if the crime is

3  committed through force as opposed fraud, or through fraud as opposed to coercion.[31]

4        For all these reasons, the court concludes that "force, fraud, or coercion" are means rather

5  than elements of the crime of sex trafficking defined in 18 U.S.C. § 1591, and that defendant's

6  arguments to the contrary are unavailing.  See, e.g., *Arreola*, 467 F.3d at 1157 ("The fact that

7  'a statute encompasses various modes of violation requiring different elements of proof . . . does

8  not compel' the conclusion that the statute creates separate offenses" (quoting *UCO Oil*, 546 F.2d

9  at 838)); see also *United States v. Paris*, No. 03:06-CR-64(CFD), 2007 WL 3124724 at *12 (D.

10  Conn. Oct. 24, 2007) (holding, in a § 1591 prosecution, that "[j]urors are required to

11  unanimously conclude that the elements of an offense are satisfied, but are not required to

12  unanimously agree on which means a defendant used to commit a particular element.  Force, fraud

13  and coercion are alternate means to accomplish a single element.  Accordingly, the jurors were

14  not required to unanimously decide which of force, fraud, or coercion Paris used to cause Jennifer

15  and Melissa to commit commercial sex acts" (citations omitted)); *United States v. Powell*, No.

16  04 CR 885, 2006 WL 1155947, *1 (N.D. Ill. Apr. 28, 2006) ("Counts 15 and 18 [which alleged

17  violations of § 1591] are not duplicitous because each alleges only one offense – that Powell used

18  force, fraud or coercion to cause someone to engage in sex for money. . . . [A]s the Supreme

19  Court has noted, jurors are not required to unanimously agree by which means a defendant

20  committed a crime," citing *Schad v. Arizona*, 501 U.S. 624, 632 (1991) ("We see no reason,

21  however, why the rule that the jury need not agree as to mere means of satisfying the *actus reus*

22  element of an offense should not apply equally to alternative means of satisfying the element of

23  *mens rea*")).

24

---

25  fraud or coercion described in subsection (e)(2), *or by any combination of such means*, . . . ."18

26  U.S.C. § 1591(b) (emphasis added).  These amendments clarify Congress's intent to criminalize
the act of sex trafficking when committed by one or several various means, rather than to make

27  each possible manner of committing the crime an element thereof.

28     [31]Government Opposition at 11.

## 2.     The Alleged Variance

Vicente next argues that there is a variance between the language of the indictment, which is conjunctive, and the language of the statute and/or jury instruction.  It is true that the second superseding indictment references the potential means of violating § 1591 conjunctively, stating that defendant acted with knowledge "that force, fraud and coercion would be used . . . and . . . that each of the females had not attained the age of 18. . . ."  A charge "need not follow any particular form or be couched in any particular terminology, [however,] and in particular, need not be charged in the language of the statute." 1 Wright, King, Klein, & Leipold, FEDERAL PRACTICE & PROCEDURE CRIMINAL 3d § 125; see also, e.g., *United States v. Cluchette*, 465 F.2d 749, 753 (9th Cir. 1972) ("The crime need not be charged in the precise language of the statute"). Moreover, many statutes specify a variety of ways a particular crime can be committed; as discussed, § 1591(a) is one such law.  In such a circumstance, "the indictment may allege commission of the offense by all the acts mentioned if it uses the conjunctive 'and' where the statute uses the disjunctive 'or.'"  Wright, et al. FEDERAL PRACTICE & PROCEDURE CRIMINAL 3d § 125; see also, e.g., *United States v. Lopez-Morales*, No. 07-30188, 2008 WL 4107235, *1 (9th Cir. Aug. 29, 2008) (Unpub. Disp.) ("Although the indictment conjunctively charged Lopez with conspiring to distribute cocaine *and* methamphetamine, the district court did not constructively amend or prejudicially vary the indictment by instructing the jury that Lopez could be found guilty if he conspired to distribute *either* cocaine *or* methamphetamine" (collecting cases)); *United States v. Booth*, 309 F.3d 566, 571-72 (9th Cir. 2002) ("It is apparent from the disjunctive 'or' in the above statute that the crime may be committed with either of the two specified states of mind. Booth's indictment, however, did not plead the two states of mind disjunctively; it alleged conjunctively that Booth conducted the unlawful financial transactions [with both states of mind]. When Booth's case was submitted to the jury, the instructions reverted to the disjunctive form: the jury was permitted to convict if it found that Booth had conducted the money laundering transactions *either* with the intent to promote the unlawful activity *or* knowing that the transactions were designed to conceal.  There was no reversible error in this sequence of events.  When a statute specifies two or more ways in which an offense may be committed, all may be alleged in

12

1  the conjunctive in one count and proof of any one of those conjunctively charged acts may

2  establish guilt" (collecting cases)); *United States v. Bonanno*, 852 F.2d 434, 441 (9th Cir. 1988)

3  ("Where a statute specifies two or more ways in which an offense may be committed, all may be

4  alleged in the conjunctive in one count and proof of any of those acts conjunctively charged may

5  establish guilt" (citations omitted)); *United States v. Bettencourt*, 614 F.2d 214, 219 (9th Cir.

6  1980) ("Bettencourt argues, finally, that the district court erred when it instructed the jury on the

7  elements of the offense, adopting the disjunctive language of 18 U.S.C. § 111, rather than the

8  conjunctive wording that had been used in the indictment.  Bettencourt's assertion that the trial

9  judge 'substantially altered' the language of the indictment is baseless.  In the absence of a

10 variance or other fatal defect in the indictment, a jury may convict on a finding of any of the

11 elements of a disjunctively defined offense, despite the grand jury's choice of conjunctive

12 language in the indictment . . . Here, the court, by instructing the jury in the disjunctive, simply

13 and properly informed the jurors that they need not find all elements charged in the indictment to

14 convict" (citations and footnotes omitted)).  In view of this precedent, Vicente's implied argument

15 that differences between the indictment and the statute/jury instructions necessitate a new trial on

16 Count 17 is unavailing.  Defendant's Rule 33 motion is, accordingly, denied.

17

18                                   **III.  CONCLUSION**

19        For the reasons stated, the court denies defendant's motion for a judgment of acquittal or,

20 in the alternative, for a new trial.

21

22 DATED: March 23, 2009

23                                          MARGARET M. MORROW
                                           UNITED STATES DISTRICT JUDGE

24

25

26

27

28