JEFF PRICE
Attorney at Law  SBN 165534
1335 4th Street
Santa Monica, California 90401
Tel 310.776.8650
Fax 310.728.1705
Email: jeff.price@mac.com

Attorney for Defendant
Maria de Los Angeles Vicente

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          vs.<br><br>MARIA DE LOS ANGELES VICENTE,<br><br>          Defendant. | **No. 2:07-CR-011(B)-MMM-3**<br><br>NOTICE OF MOTION AND MOTION FOR DISCLOSURE OF BRADY MATERIAL RELEVANT TO SENTENCING; MEMORANDUM OF POINTS AND AUTHORITIES<br><br>DATE:      July 13, 2009<br>TIME:      1:15 p.m.<br>PLACE:    Courtroom 780 |

To:    The Clerk of the Above-Entitled Court and to the plaintiff, the United States of America, and its Attorneys of Record:

PLEASE TAKE NOTICE that on July 13, 2009, at 1:15 p.m., or as soon as counsel may be heard, in the courtroom of the Honorable Margaret M. Morrow, United States District Judge, Defendant Maria de Los Angeles Vicente, by and through her attorney of record, Jeff Price, will request of this Court an order that the government (1) disclose all information in its possession and control which is material and favorable to the defendant at sentencing, including information that could be used to impeach witnesses whose allegations are included in the presentence report and also including, but not limited to, information about the current benefits that Flor Morales Sanchez and all of the other illegal alien

1  witnesses who testified in the trial in this case are receiving or in the process of
2  receiving, (2) disclose copies of all requests made by the United States Attorney's
3  Office and Department of Justice or any law enforcement agency for telephone
4  records, including copies of recordings of telephone conversations, pertaining to
5  calls made by (i) Maria de Los Angeles Vicente, (ii) Mirna Vasquez Valenzuela,
6  (iii) Armando Vicente, (iv) Gladys Vasquez Valenzuela, and (v) Flor Morales
7  Sanchez while incarcerated from December 20, 2006, through February 11, 2009,
8  (3) disclose pen register information for any telephone used by defendant Maria de
9  Los Angeles Vicente in Los Angeles Metropolitan Detention Center [MDC] from
10  January 2007 through August 2007, (4) disclose copies of recordings of all jail
11  telephone calls made by Flor Morales Sanchez and Juan Manuel Montez Velazco,
12  (5) disclose copies of the list or lists of approved telephone numbers associated
13  with defendant Maria de Los Angeles Vicente, Reg. No. 44389-112, maintained
14  with her MDC counselor for the period January 1, 2007, though August 31, 2007
15  (i.e., the list of telephone numbers that Ms. Vicente was permitted to dial when she
16  was an inmate at MDC during the specified period according to BOP inmate
17  telephone list procedures set forth in 28 C.F.R. 540.101 and BOP Policy Statement
18  5264.08), (6) disclose all rough notes of all law enforcement agents, and attorneys
19  for the government, including, but not limited to Caroline Wittcoff, Cheryl
20  O'Connor Murphy, Sarah Heidel, Andrew Kline, Curtis Kin, and Anthony Lewis,
21  of all interviews of all witnesses who testified in the trial in this case, and (7)
22  disclose copies of all rough notes or memoranda of any attorney or investigator
23  pertaining to interviews of witnesses who testified in the trial – including any
24  attorney for any of the victims, that were disclosed to the government.

25       This motion is made pursuant to the due process clause of the fifth and
26  fourteenth amendments to the United States Constitution, as interpreted and
27  applied in *Brady v. Maryland,* 373 U.S. 83 (1963), *Giglio v. United States,* 405
28  U.S. 150 (1972), and *Kyles v. Whitley,* 514 U.S. 419 (1995).

The motion is based on this Notice of Motion, the attached memorandum of points and authorities, the declaration of counsel for the defendant and attached exhibits, all of the documents and records filed with the Court in connection with this litigation, and such additional evidence that the Court permits the defendant to present at the hearing.

Respectfully submitted,

Dated: June __21st__, 2009          _____/s/ JEFF PRICE_____

JEFF PRICE
Attorney for Defendant Maria Vicente

1

# TABLE OF CONTENTS

2  Table of Authorities ...................................................................5

3  Memorandum of Points and Authorities .........................................6

4  I.    Introduction ......................................................... 6

5  II.   Argument .............................................................. 9

6         A.  Principles Represented in *Brady* and its Progeny ............... 9

7         B.  Relationship of Categories of Information Requested to this Case . 13

8         1.  Any Information that is Material and Favorable to the Defendant.... 13

9         2.  Telephone Records and Recordings .................................. 14

10        3.  Rough Notes Memorializing Statements of Witnesses...................... 18

11  III.  Conclusion ......................................................... 20

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

TABLE OF AUTHORITIES

2

Page

3

<u>Cases</u>

4 *Brady v. Maryland*, 373 S.Ct. 63 (12007) ................................................. *passim*

5 *Giglio v. United States,* 405 U.S. 150 (1972) ...................................... 2, 11, 13

6 *Kyles v. Whitley,* 514 U.S. 419 (1995)............................................................2, 13

7 *Strickler v. Greene,* 527 U.S. 263 (1999) ......................................... 12

8 *United States v. Booker*, 543 U.S. 220 (2005) ................................. 13

9 *United States v. Feeney,* 501 F.Supp. 1324 (D.Colo. 1980) ..................... 10, 11

10 *United States v. Mikaelian,* 168 F.3d 380 (9th Cir. 1999) ................................ 10

11 *United States v. Plunk,* 153 F.3d 1011 (9th Cir. 1998) ................................ 10

12 *United States v. Rodriguez,* 496 F.3d 221 (2d Cir. 2007) ............................... 12

13 *United States v. Severson,* 3 F.3d 1005 (7th Cir. 1993) ................................. 11

14 *United States v. Treacy,* 2009 WL 812033 (S.D.N.Y. 2009) .......................... 18

15 *United States v. Triumph Capital Group, Ins.,* 544 F.3d

16   149 (2d Cir. 2008) ......................................................... 18

17 *United States v. Weintraub,* 871 F.2d 1257 (5th Cir. 1989)............................. 11

18

19

<u>Statutes and Rules</u>

20 Fed. R. Evid. 502 ........................................................... 18

21

22

23

24

25

26

27

28

<u>Memorandum of Points and Authorities</u>

I.     Introduction

     The probation office disclosed the presentence report in this matter on June 10, 2009. The report recommends an offense level of 53, a criminal history category of I, and a guideline range of Life imprisonment. It contains a number of allegations that the defense contends are inaccurate.

     Prior to trial, in about August 2008, defense counsel requested, in writing, disclosure of documents pertaining to events that occurred in October 2006. In response, the government produced nothing. Subsequently, defense counsel filed a motion to dismiss the Indictment. Shortly after the motion to dismiss was electronically filed, the government sent an e-mail to counsel with an attachment containing approximately 60 pages of documents pertaining to the October 2006 "welfare checks"; the documents that had been in the possession, custody or control of the government for more than 20 months, which were disclosed a few weeks prior to the trial, contained exculpatory statements by Minor Female No. 4 and other exculpatory information.[1] The government also withheld boxes of information, including approximately 18 cell phones, an optical disc containing a forensic analysis of the cell phones, a hard drive from a computer that had been used by at least one of the victims – Minor Female #4, and, *inter alia*, numerous photographs, notebooks and other documents until May 2008 or thereafter, which contained exculpatory evidence, including, but not limited to, a cell phone photograph (extracted by an expert witness retained by Ms. Vicente) of a cake that

---

[1]     The defendant is aware that the Court issued an opinion on the topic of the documents that were belatedly disclosed by the government in which the documents may not have been found to have been exculpatory, but the defense maintains that the documents were exculpatory.

1   was unadorned with candles, which impeached the statements made and testimony

2   given by several of the victims.

3         In the case of former Senator Ted Stevens, Attorney General Eric Holder

4   determined that prosecutors had improperly withheld prosecutors' notes that would

5   have aided in Stevens' defense. On April 14, 2009, Attorney General Holder

6   initiated comprehensive steps to enhance the Justice Department's compliance with

7   rules that require the government to turn over evidence to the defense in criminal

8   cases. Attorney General Holder initiated supplemental training for federal

9   prosecutors throughout the Department on their discovery obligations in criminal

10   cases.

11         In April 2009 the Department of Justice released new Freedom of

12   Information Act [FOIA] Guidelines that direct all executive branch departments

13   and agencies to apply a presumption of openness when administering the FOIA.

14   The new Guidelines, announced in a memo to heads of executive departments,

15   build on principles of openness and rescind the guidelines issued by the previous

16   administration.

17         During the trial the government called admitted perpetrator, codefendant and

18   cooperator Flor Morales Sanchez as a witness in its case-in-chief to testify against

19   Ms. Vicente. Despite the fact that victims Minor Female #4 (who is related to

20   Morales Sanchez) and Jane Doe #7 testified that Morales Sanchez recruited them,

21   the government elicited testimony from Morales Sanchez that Ms. Vicente directed

22   Morales Sanchez in her recruitment actions, Reporter's Transcript of Proceedings

23   [RT], January 16, 2009, p. 1429, that Morales Sanchez was afraid of Ms. Vicente,

24   RT January 20, 2009, pp. 1483, 1484, and that Ms. Vicente used force and fear

25   against her, Minor Female #4 and, *inter alia*, Jane Doe #7. Morales Sanchez also

26   testified – contrary to the testimony of the victims themselves and her own

27   statements at her initial proffer session – that Ms. Vicente hit the girls. RT January

28   20, 2009, p. 1542. In cross-examination Morales Sanchez was questioned about a

1   lengthy interview she voluntarily gave to Alfredo Rasch while she was living in

2   Los Angeles in 2007 before she was arrested in connection with this case in

3   August 2007. Most of the statements Morales Sanchez made in the interview about

4   Ms. Vicente were unequivocally exculpatory. During cross-examination and in

5   redirect testimony, however, Morales Sanchez repeatedly disavowed the

6   statements she made in the recorded interview and even testified in response to a

7   leading question by the prosecution that she did not know the interview was being

8   recorded, despite the recording itself, which contains the clear and unequivocal

9   acknowledgement by Morales Sanchez that the interview was being recorded.

10  Morales Sanchez also claimed that she made statements favorable to Ms. Vicente

11  in the interview because she was afraid of Ms. Vicente. Finally, during redirect

12  examination, Morales Sanchez even testified that Ms. Vicente called her on her

13  cell phone (she later testified that Ms. Vicente called her at her residence) and told

14  her to talk to Mirna's investigator and to say nice things to him.

15        Additionally, the principal witnesses who testified against Ms. Vicente,

16  Minor Female #4 and Jane Doe #7, were thoroughly impeached by numerous prior

17  inconsistent statements that they had made in numerous interviews with law

18  enforcement agents and Assistant United States Attorneys, in most of which they

19  were also accompanied by their own attorney. In one interview, during which she

20  was accompanied by at least one of her own attorneys, Minor Female #4 proceeded

21  to spin a tale about traveling to the United States with Jane Doe #7 that was a

22  complete and rather intricate fabrication. During a fair portion of cross-

23  examination Minor Female #4 testified that she did not remember the many

24  contradictory statements she had made. It seems, given the state of the testimony of

25  these and other witnesses, that during the many interviews of Minor Female #4,

26  Jane Doe #7 and the many other witnesses who testified in the trial, the law

27  enforcement agents and AUSAs Wittcoff, Murphy, Heidel, Kline, Kin and Lewis

28  took notes that contain information that was not disclosed to the defense and that

1    reveal contradictions and other impeaching information that would constitute
2    exculpatory evidence.

3        The telephone and other records that are requested will reveal whether there
4    was a telephone call between Ms. Vicente and Flor Morales Sanchez; the defense
5    is confident that such records will reveal that no such conversation ever took place
6    between Ms. Vicente and Flor Morales Sanchez, and that the story concocted in
7    court, which took the form of the testimony of Morales Sanchez, was a pure
8    fabrication designed to undermine exculpatory statements that Morales Sanchez
9    had made to an investigator.

10       The BOP inmate telephone lists will reveal that Morales Sanchez's cell
11   phone number was not even on the approved list of telephone numbers associated
12   with Ms. Vicente and that Ms. Vicente could not have called Morales Sanchez on
13   her cell phone as Morales Sanchez testified.

14       Defense counsel delivered a letter dated June 1, 2009, which included most
15   of what is requested in this motion, to each of the government attorneys involved
16   in prosecuting this case (AUSAs Caroline Wittcoff, Cheryl O'Connor Murphy,
17   Sarah Heidel, Andrew Kline, Curtis Kin and Anthony Lewis) a copy of which is
18   attached to the accompanying Declaration of Counsel. No response was received.

19

20   II.    Argument

21

22   A.     Principles Represented in *Brady* and its Progeny

23

24       In analyzing the scope of *Brady v. Maryland,* 373 U.S. 83 (1963), it is
25   appropriate to begin with the *Brady* opinion itself. It states its scope in at least two
26   separate paragraphs. In one, it states: "[T]he suppression by the prosecution of
27   evidence favorable to an accused upon request violates due process when the
28   evidence is material either to guilt or to punishment, irrespective of the good faith

1  or the bad faith of the prosecution." *Brady,* 373 U.S. at 87 (emphasis added). Soon

2  after, it states the rule with the same breadth: "A prosecution that withholds

3  evidence on demand of an accused which, if made available will tend to exculpate

4  or reduce the penalty helps shape a trial that bears heavily on the defendant." *Id.* at

5  87-88.

6       *Brady* itself was a sentencing case. *See United States v. Feeney,* 501 F.Supp.

7  1324, 1334 (D.Colo. 1980) ("[i]t is deserving of comment that *Brady v. Maryland*

8  dealt only with punishment"). While the defendant in *Brady* was challenging both

9  his conviction and his death sentence, the Supreme Court found the withheld

10 evidence material only to sentencing and held it proper for the court of appeals to

11 affirm the conviction but vacate the sentence. *See Brady,* 373 U.S. at 88, 90-91.

12 This makes sense only if the duty recognized in *Brady* was one that extended to

13 sentencing as well as to trial.

14       The applicability of *Brady* at sentencing also has been recognized by lower

15 courts, including the Ninth Circuit. In *United States v. Plunk,* 153 F.3d 1011 (9th

16 Cir. 1998), the defendant raised a *Brady* claim based on undisclosed impeachment

17 information in the possession of a cooperating witness's attorney. *See Plunk,* 153

18 F.3d at 1028. The court acknowledged that "[p]ursuant to *Brady,* 'the suppression

19 by the prosecution of evidence favorable to an accused upon request violates due

20 process where the evidence is material to guilt or punishment, irrespective of the

21 good faith or bad faith of the prosecution.'" *Plunk,* 153 F.3d at 1028. The court

22 rejected the defendant's claim not because *Brady* did not apply but because "the

23 prosecution did not possess or control the requested information." *Plunk,* 153 F.3d

24 at 1028.

25       The Ninth Circuit applied *Brady* to sentencing in *United States v. Mikaelian,*

26 168 F.3d 380 (1999). It quoted the same language from *Brady* that it had quoted in

27 *Plunk* and cited *Plunk* as "applying *Brady* at sentencing." *Mikaelian,* 168 F.3d at

28

388-89. It rejected the defendant's claim only because he "[d]id not allege that the government ha[d] withheld any evidence favorable to him." *Id.* at 389.

Cases in which courts have vacated sentences based on *Brady* violations include *United States v. Weintraub,* 871 F.2d 1257 (5th Cir. 1989) and *United States v. Severson,* 3 F.3d 1005 (7th Cir. 1993). In *Weintraub,* the court vacated a sentence where the government withheld evidence impeaching trial testimony the lower court had relied upon in determining drug quantity at sentencing. *See Weintraub,* 871 F.2d at 1265. In *Severson,* the court vacated a sentence and remanded for reconsideration of rulings on the obstruction of justice and acceptance of responsibility adjustments under the Sentencing Guidelines based on *Brady* material disclosed by a prosecutor just prior to oral argument. *See Severson,* 3 F.3d at 1012-13.

The applicability of *Brady* at sentencing was discussed in some depth in *United States v. Feeney,* 501 F.Supp. 1324 (D.Colo. 1980), in which the court stated:

> Rule 16 has to do with trials while *Brady v. Maryland* is two-pronged. Its declaration of a constitutional right to disclosure of exculpatory material says there is mandatory disclosure of anything which bears on guilt or on punishment . . . .

*Feeney, supra,* 501 F.Supp. at 1334. As pointed out in *United States v. Severson*:

> Due process also requires a defendant receive a fair sentencing hearing. The amount of "process" required in the sentencing hearing is not as great as that required in the trial itself. Nonetheless, *Brady* applies to sentencing.

*Severson,* 3 F.3d at 1013 [citation omitted].

In *Giglio v. United States,* 405 U.S. 150 (1972), the Supreme Court held:

> As long ago as *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 342, 79 L.Ed. 791 (1935), this Court made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with "rudimentary demands of justice." This was reaffirmed in *Pyle v.*

*Kansas,* 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942). In *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), we said, "(t)he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Id.,* at 269, 79 S.Ct., at 1177. Thereafter *Brady v. Maryland,* 373 U.S., at 87, 83 S.Ct., at 1197, held that suppression of material evidence justifies a new trial "irrespective of the good faith or bad faith of the prosecution." When the "reliability of a given witness may well be determinative of guilt or innocence," nondisclosure of evidence affecting credibility falls within this general rule. *Napue, supra,* at 269, 79 S.Ct., at 1177. . . . A new trial is required if "the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . ." *Napue, supra,* at 271, 79 S.Ct., at 1178.

*Id.* at 153-154 [citation omitted].

The Supreme Court explained in *Strickler v. Greene,* 527 U.S. 263 (1999) that the Government's duty to disclose derives from

the special role played by the American prosecutor in the search for truth in criminal trials. Within the federal system, for example, the Court has said that the United States Attorney is "the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States,* 295 U.S. 78, 88 (1935).

*Strickler,* 527 U.S. at 281.

In *United States v. Rodriguez,* 496 F.3d 221 (2[d] Cir. 2007), the United States Court of Appeals for the Second Circuit stated:

*Brady* information must be disclosed, furthermore, in a manner that gives the defendant a reasonable opportunity either to use the evidence in the trial or to use the information to obtain evidence for use in the trial. Thus, the Government must make disclosures in sufficient time that the defendant will have a reasonable opportunity to act upon the information efficaciously. *See Leka,* 257 F.3d at 100 (noting that *Brady* disclosures must be timed so that

the defense has a sufficient opportunity to use them); *id.* at 101 ("When . . . a disclosure is first made on the eve of trial, or when trial is under way, the opportunity to use it may be impaired."); *see also DiSimone v. Phillips,* 461 F.3d 181, 197 (2d Cir.2006) ("The more a piece of evidence is valuable and rich with potential leads, the less likely it will be that late disclosure provides the defense an 'opportunity for use.'" (quoting *Leka,* 257 F.3d at 103)). Similarly, disclosures must be sufficiently specific and complete to be useful. *See Leka,* 257 F.3d at 103 (finding *Brady* not satisfied where Government did not disclose details of potential witness's knowledge, because defendant was left to gamble on what witness would say).

*Id.* at 226. Also, "[t]he obligation to disclose information covered by the *Brady* and *Giglio* rules exists without regard to whether that information has been recorded in tangible form." *Id.* Since it has been made clear that a defendant has the "right to have the jury find the existence of '"any particular fact"' that the law makes essential to his punishment," *see, e.g., United States v. Booker,* 543 U.S. 220, 232 (2005), the importance of the full disclosure of exculpatory evidence is hightened.

B.     Relationship of Categories of Information Requested to This Case

1.     Any Information that is Material and Favorable to the Defendant

Ms. Vicente requests disclosure of any information within the possession or control of the government that is material and favorable to her in the context of sentencing. This request corresponds to the duty of the prosecution to learn of favorable evidence known to the prosecution team. *See Kyles v. Whitley,* 514 U.S. 419, 437-38 (1995) ("This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecutor succeeds or

fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith, see *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196-1197)*,* the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable.").

Ms. Vicente also requests information about the current benefits that Flor Morales Sanchez and all of the other illegal alien witnesses who testified in the trial in this case are receiving or in the process of receiving. On information and belief, Morales Sanchez is attempting to obtain permission, with the help and intervention of the prosecution in this case, from the Department of Homeland Security to remain in the United States on a permanent basis. Given the state of the disclosures prior to and during trial it was unknown during the trial what the exact status of many of the victims or other illegal alien witnesses was and what immigration benefits they were to receive. Ms. Vicente requests complete disclosure of all of the benefits that Morales Sanchez, the victims and the other illegal alien witnesses are receiving or are in the process of receiving. This information is relevant to impeachment of their testimony in addition to any motivations they had for testifying and for making statements during the Presentence Investigation.

2.     Telephone Records and Recordings

The government called two cooperator witnesses Flor Morales Sanchez and Juan Manuel Montez Velazco in its case in chief. Both witnesses were incarcerated. Morales Sanchez was a codefendant in this case, had changed her plea to guilty and was awaiting sentencing. Montez Velasco was a defendant in another criminal case in this district, had entered a guilty plea and was awaiting sentencing. On information and belief, Montez Velasco had volunteered to be a

witness against the defendants. Both witnesses had unavoidable incentives to provide testimony favorable to the prosecution.

In this case the government used its key witness, Flor Morales Sanchez, an admitted perpetrator and a codefendant, to elicit evidence from an insider perspective to reinforce its case against Ms. Vicente. The PSR recommends that a multi-level enhancement for role in the offense be applied in determining the guidelines level for Ms. Vicente. Despite the fact that when she was unencumbered by a grand jury indictment charging her with crimes carrying a potential life sentence and living on her own in Los Angeles, she was interviewed by a defense investigator and made numerous statements exculpating Ms. Vicente, the trial testimony of the Flor Morales Sanchez, who pleaded guilty as a cooperator and was seeking benefits from the government, is integral to the determination that this leader-supervisor role in the offense enhancement be applied to Ms. Vicente. The government disclosed several reports of interviews of Morales Sanchez to the defense prior to and during trial. None of the reports, which spanned the period from August 2007 through January 2009, contained any information about Ms. Vicente contacting Morales Sanchez and importuning her to speak with Alfredo Rasch, the investigator for Mirna Vasquez Valenzuela. However, apparently, shortly prior to or during the trial the government learned that Mr. Rasch had interviewed Morales Sanchez in 2007. The government then elicited testimony from Morales Sanchez that Ms. Vicente had called her in 2007 and had told her to talk to Mirna's investigator and to give him favorable information. In response to this fantastic testimony the defense immediately subpoenaed records of Ms. Vicente's telephone calls while she was incarcerated at MDC in 2007. No records were produced. The government called a BOP witness who testified that recordings of prison telephone calls are purged after 6 months. What remains unknown is whether the government ever requested copies of recordings of Ms. Vicente's telephone calls during the January 2007 through August 2007 period.

Morales Sanchez, whose son, fathered by Ms. Vicente's brother, also a
defendant in this case, was born on March 11, 2007, had been interviewed by
Alfredo Rasch, a defense investigator for co-defendant Mirna Vasquez Valenzuela
who was working with the defense team. Morales Sanchez made numerous
statements during the lengthy interview, which was recorded and transcribed, that
exculpated Ms. Vicente. However, at trial, the defense was ambushed with
testimony by Morales Sanchez that Ms. Vicente had called her on her cell phone,
and that Ms. Vicente had pressured her to talk to Mr. Rasch and to – in essence –
provide false information to him for the benefit of Ms. Vicente. In response to an
open-ended question posed by AUSA Cheryl Murphy Morales Sanchez testified
that Ms. Vicente called Morales Sanchez on Morales Sanchez's cell phone. AUSA
Murphy objected to the response given by her own witness. She was then offered
the opportunity to withdraw the question, which she availed herself of. That the
question was withdrawn does not in the least affect the exculpatory nature of the
evidence. The PSR asserts that Ms. Vicente and Mirna Vasquez Valenzuela
intimidated Morales Sanchez, by, *inter alia*, attempting to coerce her into
withdrawing her guilty plea and accordingly recommends a 2-level enhancement
under U.S.S.G. §3C1.1. *See* PSR ¶¶ 90-92. Telephone records, including the BOP
list of inmate approved telephone numbers for Ms. Vicente and recordings of
telephone calls made by Ms. Vicente, will reveal that Ms. Vicente never called
Morales Sanchez on her cell phone and will reveal that the testimony of Morales
Sanchez vis-à-vis the alleged telephone call wherein Ms. Vicente is alleged to have
importuned Morales Sanchez to talk to Alfredo Rasch was false. This is
exculpatory evidence, which the defense is entitled to.

Given the willingness of Morales Sanchez to testify falsely, it is likely that
she made statements during telephone conversations that would corroborate the
theory that the underlying theme of her testimony was false, which would
constitute additional exculpatory evidence. Similarly, any statements made by

Montez Velasco in recorded telephone conversations that show that he was fabricating facts would constitute exculpatory evidence. If the evidence is there, it must be disclosed. Ms. Vicente thus requests the telephone records related to her own telephone calls, as well as those related to telephone calls to which Morales Sanchez was a party and requests copies of all recordings of telephone calls made by the two cooperating witnesses when they were incarcerated. Records, i.e., recordings, of telephone calls made by Gladys Vasquez Valenzuela and Mirna Vasquez Valenzuela are also requested for the purpose of obtaining recordings of any calls between them and Morales Sanchez. Recordings of calls made by Luis Vicente Vasquez are requested because it is known that he spoke regularly with Morales Sanchez from the time of his arrest until the trial. On information and belief, recordings of those calls will contain exculpatory evidence in the form of statements of Morales Sanchez that are directly contradictory to her trial testimony and statements made in proffer sessions, which will impeach the testimony of Flor Morales Sanchez.

In a recent prosecution in the Central District of California the issue of statements made in recorded telephone calls made by a government cooperator was at issue. On June 1, 2009, in *United States v. Torres,* No. 2:06-CR-656-SVW, Judge Wilson stated:

> And the court also finds that the recorded telephone calls [involving a government cooperator] – prison calls that the defense used at trial were *Brady* material, and that while the defense unearthed them through its efforts, those phone calls should have been unearthed by the government. They were *Brady* material, and the government was responsible for uncovering them . . . .

Reporter's Transcript of Proceedings [RT], June 1, 2009, Case No. CR-06-656(A)-SVW, pp. 5-6, a true and correct copy of which is attached to the accompanying Declaration of Counsel, marked Exhibit C.

Judge Wilson also inquired into the availability of prison telephone call recordings. AUSA Stephen Wolfe acknowledged that the call recordings are stored in a digital format and stated that "[i]f they have not been overwritten, they exist, if at all, in hard drives in one or more places that would require forensic computer analysis to retrieve." RT June 1, 2009, pp. 9-10.

3.      Rough Notes Memorializing Statements of Witnesses

Rough notes taken by an investigator, law enforcement agent or prosecutor that memorialize statements made by witnesses that are inherently exculpatory or that "could lead to admissible evidence or would be an effective tool in disciplining witnesses during cross-examination by refreshment of recollection or otherwise" must be disclosed under *Brady. See United States v. Triumph Capital Group, Inc.,* 544 F.3d 149, 162-163 (2$^d$ Cir. 2008). In *Triumph Capital Group,* the notes at issue were notes "taken at a meeting where Silvester's attorney approached the government on Silvester's behalf to relate Silvester's account of his criminal activity in an attempt to convince the government to offer him a cooperation agreement." *Id.* at 163.

Under Fed. R. Evid. 502, any notes or memoranda that were disclosed by any attorney or investigator for the victims in this case to the government should be disclosed to the defense. *See United States v. Treacy,* 2009 WL 812033, *2 (S.D.N.Y. 2009). Thus, any notes or memoranda of any of the attorneys for any of the victims in this case who testified at trial, which were disclosed to the government, must be disclosed to the defense.

The testimony of Morales Sanchez was false. Morales Sanchez initially testified – in response to a question posed by AUSA Cheryl Murphy – that Ms. Vicente called Morales Sanchez on Morales Sanchez's cell phone. Reporter's Transcript of Proceedings, January 20, 2009, p. 1512, a true and correct copy of

which is attached to the accompanying Declaration of Counsel, marked Exhibit B. AUSA Cheryl Murphy immediately objected to the answer to her own question, arguing that the response was "nonresponsive." She was then allowed to have the question stricken. It is highly probable that the reason Ms. Murphy objected to the answer to her own question was that she knew that Morales Sanchez lied because she knew that Ms. Vicente could not have called Morales Sanchez on her cell phone. The BOP inmate telephone lists will reveal conclusively that defendant Vicente never called Morales Sanchez on her cell phone because the inmate telephone lists will show that Morales Sanchez's cell phone telephone number did not appear on Ms. Vicente's list of approved telephone numbers. Recordings of telephone calls made by Ms. Vicente will reveal that Morales Sanchez testified falsely on January 20, 2009, when she testified that Ms. Vicente urged her to talk to Alfredo Rasch; the recordings will reveal that no such conversation ever took place and that the testimony of Morales Sanchez was fabricated in order to destroy the probativeness of the statements that Morales Sanchez made to Rasch in the recorded interview. If there is any way that the recordings of Ms. Vicente's telephone calls from 2007 can be retrieved, they should be retrieved.

Any notes of any law enforcement agent, or any Assistant United States Attorney taken during any interview of Morales Sanchez – including any notes taken by any of the above mentioned persons in proffer sessions or any notes taken by any of the above mentioned persons of conversations with Morales Sanchez's attorney – should be disclosed as they probably contain exculpatory information revealing different stories Morales Sanchez has told, statements she has made that are inconsistent with her trial testimony and evidence of fabrication of evidence on the part of Morales Sanchez. These notes should also be disclosed to unveil any statements Morales Sanchez made about the Rasch interview or any statements she made in which she was untruthful and lied about having been interviewed by the defense.

1    The refutation of the testimony of Morales Sanchez would be important to

2    undercut the argument made by the government in the PSR that Ms. Vicente

3    engaged in intimidation of Morales Sanchez, attempted to dissuade her from

4    cooperating with the government and attempted to convince her to withdraw her

5    guilty plea.

6    Despite undergoing numerous interviews with law enforcement agents and

7    government attorneys and in the protective presence of their own attorneys, the

8    victims in this case told numerous contradictory stories and at trial were evidently

9    testifying by means of cues in line with a script – as was demonstrated on

10   numerous occasions during the trial when they repeatedly stated "I do not

11   remember" when confronted by glaring inconsistencies in their prior statements

12   and even sometimes – notably, in the case of Minor Female #4 – denying that she

13   had made statements that had appeared in the official reports of law enforcement

14   agencies.

15

16   III.   Conclusion

17

18   Thus, for the reasons stated here, the Court should order the government to

19   provide all information material and favorable to Ms. Vicente for sentencing,

20   which is known or reasonably should be known to the prosecutors and/or the

21   government agencies involved in this case. This should include (1) all information

22   in its possession and control which is material and favorable to the defendant at

23   sentencing, including information that could be used to impeach witnesses whose

24   allegations are included in the presentence report, and also including, but not

25   limited to, information about the current benefits that Flor Morales Sanchez and all

26   of the other illegal alien witnesses who testified in the trial in this case are

27   receiving or in the process of receiving, (2) copies of all requests made by the

28   United States Attorney's Office and Department of Justice or any law enforcement

agency for telephone records, including copies of recordings of telephone conversations, pertaining to calls made by or to which the following persons were a participant (i) Maria de Los Angeles Vicente, (ii) Mirna Vasquez Valenzuela, (iii) Armando Vicente, (iv) Gladys Vasquez Valenzuela and (v) Flor Morales Sanchez while incarcerated from December 20, 2006, through February 11, 2009, (3) pen register information for any telephone used by defendant Maria de Los Angeles Vicente in Los Angeles Metropolitan Detention Center [MDC] from January 2007 through August 2007, (4) copies of recordings of all jail telephone calls made by Flor Morales Sanchez and Juan Manuel Montez Velazco, (5) copies of the list or lists of approved telephone numbers associated with defendant Maria de Los Angeles Vicente, Reg. No. 44389-112, maintained with her MDC counselor for the period January 1, 2007, though August 31, 2007, (6) all rough notes of all law enforcement agents, and attorneys for the government, including, but not limited to Caroline Wittcoff, Cheryl O'Connor Murphy, Sarah Heidel, Andrew Kline, Curtis Kin, and Anthony Lewis, of all interviews of all witnesses who testified in the trial in this case, (7) copies of all rough notes of any attorney or investigator, which were disclosed to the government, that were taken during interviews of witnesses or that represent statements made by witnesses who testified at the trial in this case, and (8) any other *Brady* material.

Respectfully submitted,

Dated: June   21st, 2009          /s/ JEFF PRICE
                                  JEFF PRICE
                                  Attorney for Defendant Maria Vicente

# PROOF OF SERVICE

I, Jeff Price, declare that I am employed in the county of Los Angeles, State of California, I am over the age of 18 and not a party to the within action. My business address is 1335 4th Street, Santa Monica, California 90401.

On June 21, 2009, I served the foregoing documents, described AS MOTION FOR DISCLOSURE OF BRADY MATERIAL RELEVANT TO SENTENCING [*United States v. Valenzuela et al*, 07-CR-11-MMM-3] on counsel for the interested parties in this action:

☒ by placing the true copies thereof:

*See* below and Attachment

☐ by placing ☐ the original ☐ a true copy thereof enclosed in a sealed envelope addressed as follows:

☐ by mail as follows: I am "readily familiar" with the business practice at my place of business of collection and processing of correspondence for mailing with the United States Postal Service. Under that practice correspondence so collected and processed is deposited with the United States Postal Service that same day with postage fully prepaid at Santa Monica, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing stated by declaration or affidavit.

☒ by e-mail as follows: I delivered the documents by e-mail to counsel for the following parties:  *See* attachment.

Executed on June 21, 2009, at Santa Monica, California.

☒ [Federal]  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service is made.

_____/s/_____
Jeff Price

| | | |
|---|---|---|
| Charles Song | Sheila Neville | Ivy C. Lee |
| Howrey LLP | LAFLA | Asian Pac. Isl. Leg. |
| 550 S. Hope St., Ste. 1100 | 5228 Whittier Blvd. | 1188 Franklin St. |
| Los Angeles, CA  90071 | Los Angeles, CA 90022 | Ste. 202 |
| | | San Francisco, CA |

22   -   **NOTICE OF MOTION AND MOTION FOR DISCLOSURE OF BRADY MATERIAL RELEVANT TO SENTENCING**